Charles L. JACKSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 27S00–9606–CR–468.

Supreme Court of Indiana.

July 22, 1997.

David Glickfield, Jr., Marion, for Appellant.

Pamela Carter, Attorney General, Michael K. Ausbrook, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

Defendant Charles L. Jackson was convicted of attempted rape,[1] a Class A felony, criminal confinement,[2] a Class D felony, and being a habitual offender. The trial court imposed concurrent sentences of fifty years on the first count and three years on the second count. The attempted rape sentence was enhanced by thirty years for the habitual offender conviction, for a total term of eighty years imprisonment. In this direct appeal, Jackson presents two issues for our review:

I. Was Jackson denied the effective assistance of trial counsel?

II. Was there sufficient evidence to support elevating the attempted rape conviction to a Class A felony?

We affirm.

## Factual and Procedural Background

On the night of July 21, 1995, the victim, a sixteen-year-old girl, was walking home in Marion, Indiana when she was grabbed from behind by a man she later identified as the defendant. Jackson placed one arm around her neck and held what the victim believed to be a knife against her side with his other hand.[3] The defendant told the victim not to scream, that he had "just got out of jail" for killing someone, and that he "didn't mind going back." Jackson then told the victim she was a "beautiful black woman" and that he did not want to kill her. Jackson forced the victim to walk with him into an alley and then to lie down in some grass where he searched her for money. Jackson found change in the pockets of the victim's shorts and said he was going kill her for earlier denying that she had any money. The defendant told the victim that because she did not have any money he wanted to "make

love" to her. She rejected this advance and he then told her to pull down her pants. The victim complied but stated that she was menstruating. Upon hearing this, Jackson renewed his threat to kill her for "lying" to him. The victim told Jackson he could see for himself. The defendant reached into the victim's pants, felt her sanitary napkin, and told her to pull up her pants. Jackson then stated he was going to kill her because she had seen his face. After the victim convinced Jackson that she could not identify him, Jackson said he would not kill her and left the scene. At approximately the same time these events took place, a witness saw Jackson running from and looking back towards the alley in which the assault occurred.

A jury convicted Jackson and he appeals. This Court has jurisdiction under Indiana Appellate Rule 4(A)(7).

## I. Effective Assistance of Trial Counsel

■ Jackson argues that his trial counsel was constitutionally ineffective. A defendant must show two things to establish a violation of the Sixth Amendment right to the effective assistance of counsel: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing counsel's handling of the case under the first prong of *Strickland,* we presume that reasonable professional judgment was exercised in making important decisions; accordingly, we scrutinize the management of the case with great deference. Counsel's conduct is assessed based on facts known at the time and not through hindsight. And rather than focusing on isolated instances of poor tactics or strategy in the handling of a case, the effectiveness of representation is determined based on the

---

1. IND.CODE § 35–42–4–1 (1993) (rape); Ind.Code § 35–41–5–1 (1993) (attempt).

2. IND.CODE § 35–42–3–3(1) (1993).

3. On cross-examination the victim testified that she never saw a knife and that the weapon Jackson was pushing against her could have been car keys.

whole course of attorney conduct. *See, e.g., Butler v. State,* 658 N.E.2d 72, 78–79 (Ind. 1995); *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995), *reh'g denied.* The second part of the *Strickland* test—the "prejudice" prong—requires a showing of "a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068–69. More recently, the U.S. Supreme Court held that prejudice sufficient to set aside the conviction is not established unless the error rendered the result of the proceeding fundamentally unfair or unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). With these standards in mind, we assess Jackson's challenge to his trial representation.

A. *Failure to object to references to past incarceration*

■ Each of Jackson's claims of ineffective assistance is based on a failure to object at trial. Accordingly, the defendant must show that a proper objection, if made, would have been sustained. *Lowery v. State,* 640 N.E.2d 1031, 1042 (Ind.1994), *cert. denied,* 516 U.S. ——, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

■ During opening and closing arguments, the prosecutor referred to Jackson's statement to the victim that Jackson had been in jail for killing someone and did not mind going back. Jackson contends this argument impermissibly referred to Jackson's prior criminal record, in violation of a pre-trial motion in limine order excluding evidence of Jackson's two prior rape convictions. We do not agree. The prosecutor referred to Jackson's threat as reported by the victim in her testimony. One element of the crime is "threatening the use of deadly force." IND.CODE § 35–42–4–1 (1993). Precisely what the defendant said to the victim is critical evidence as to that element. The evidence was not offered to show character or propensity as proscribed by Indiana Evidence Rule 404(b). Rather, it was offered to prove an element of the crime in this case. This the State was entitled to do. *Hale v. State,* 547 N.E.2d 240, 243 (Ind.1989) (prose-cutor can comment on and draw logical conclusions from the evidence).

Moreover, the prosecutor did not refer to the prior rape convictions as such. To the extent the prosecutor alluded to the possibility that Jackson had served time in prison, this is distinguishable from the convictions excluded under the motion in limine. Nothing in the record indicates Jackson was incarcerated as punishment for the rape convictions. Because a proper objection on this point would not have been sustained, trial counsel was not ineffective for failing to make the objection. Trial counsel could have asked for a limiting instruction to the effect that the victim's testimony should be considered only as proof of the deadly force element. However, Jackson's own reference (whether true or not) to prior time in prison is so integral to this proof, and no other evidence suggested a prior criminal record to the jury. Accordingly, we see neither deficient attorney performance nor sufficient prejudice for reversal.

B. *Failure to object to comments during closing argument*

■ Jackson argues that trial counsel was ineffective for failing to object to several comments made by the prosecutor during closing arguments. A prosecutor, in final arguments, may "state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge that is independent of the evidence." *Hobson v. State,* 675 N.E.2d 1090, 1096 (Ind.1996) (internal quotation marks and citation omitted). Jackson challenges the following remarks here:

[M]aybe I can almost hear [Jackson] now rising up in righteous indignation saying no, I showed no emotion because I didn't do those things. Well you know what I didn't either and it was all I could do to keep from breaking down yesterday. I don't know if you noticed it or not. And I know that it was all a lot of you could do to keep from doing that because I observed you and none of you did it either.

Jackson maintains that these comments were objectionable because they reflected the prosecutor's personal feelings and observa-

tions of the defendant during trial. Although Jackson may be correct as a technical matter, he does not explain what difference an objection at this stage would have made nor why the failure to object was unreasonable attorney performance. The competent professional assistance guaranteed by the Sixth Amendment does not require a lawyer to object at every opportunity. Numerous factors bear on the decision to object, including probable effect on the trial outcome and the possible impact of calling the jury's attention to the evidence or statement argued to be objectionable. This case involved testimony by a victim of a threatened rape in the course of an extended period of terror. Certainly it was within the wide range of reasonable attorney performance not to focus attention on whether the evidence here merited a strong emotional reaction by the defendant or anyone else.

■ Jackson further contends his counsel's failure to object to the prosecutor's argument rendered his counsel ineffective because the prosecutor's comments were reasonable comments on the evidence only when coupled with the prosecutor's knowledge of Jackson's two prior rape convictions. According to Jackson, the victim's account, standing alone, "should not normally rise such passions in a reasonable person." We disagree that this raises any issue of ineffective assistance. The victim's testimony established that Jackson assaulted her, confined her, and threatened to take her life. The State's suggestions that the jury might have reacted emotionally to this account was not an inappropriate comment on this evidence. Trial counsel, consequently, was not ineffective for failing to object.

■ Jackson next challenges failure to object to the prosecutor's argument that the assault took place with a deadly weapon: [W]hat does [Jackson] have in his hand? A key maybe. Where does it go? In her side. What does it feel like? It feels like a knife because it's a sharp, pointed, metal object. Is that capable of causing serious bodily injury? You better believe it.... And you know what if I had this key and I wanted to kill someone, if I lunged that

key at that point, and I did a slicing downward movement, that person would die. Because I would have severed the jugular vein and I would have done it with this key.... So I don't care if the victim said well I suppose it could have been a key. The way it was being used and the way it was threatening to be used it was a deadly weapon and you know it as well as I do.

Jackson contends that trial counsel should have objected to these comments because they inappropriately imply personal knowledge or a personal opinion of how a key could be used as a deadly weapon. The prosecutor's remarks were not out of bounds. According to the victim's testimony, Jackson grabbed her from behind and held what she at the time believed was a knife, but at trial conceded could have been a key, against her side. Because a key can be a sharp object able to pierce human skin and cause serious bodily injury depending on how it is used, the weapon in this case (whatever it was) could have been a deadly weapon as defined by our criminal statutes. *See* IND.CODE § 35–41–1–8 (Supp.1994) ("deadly weapon" is a weapon that in the manner it is used or is intended to be used is readily capable of causing serious bodily injury); IND.CODE § 35–41–1–25 (1993) (defining "serious bodily injury"); *cf. Lamb v. State*, 462 N.E.2d 1025, 1028–29 (Ind.1984) (where defendant threatened rape victim with "screw-driver type object" sufficient evidence supported jury's conclusion that deadly weapon was used in the crime). Rather than implying any personal knowledge, the prosecutor in this case merely asked the jury to make a reasonable inference from the evidence. Because no proper objection to these comments would have been sustained, counsel was not ineffective for failing to make one.

■ Finally, Jackson argues that trial counsel was ineffective for failing to object to remarks about the defendant's character and motivations. The State referred to Jackson in its closing argument as a "cold blooded psychopath" and contended it was "odd" that the defendant would consider sparing the victim's life because she was a "beautiful, young black girl." The prosecutor then speculated that in saying this the defendant

may have been motivated by the "black pride" movement of the 1970s and was still living in that era. Jackson contends these statements were not supported by the evidence and tended to prejudice him and mislead the jury. The State concedes that an objection to these comments probably would have been sustained, but argues that Jackson was not deprived of a fair trial.

The U.S. Supreme Court has directed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. Assuming without deciding that a proper objection to the prosecutor's remarks would have been sustained, there is no showing of a reasonable probability that the result of the trial would have been different. Jackson does not explain how the comments contradicted or undermined the State's strong proof that he, and no one else, attempted to rape the victim and confined her against her will. The prosecutor's comments, though objectionable, did nothing to call the evidence into question so as to render the result of the trial fundamentally unfair or unreliable. *Fretwell*, 506 U.S. at 369, 113 S.Ct. at 842–43. Jackson offers no convincing argument to the contrary. *Cf., e.g., Douglas v. State*, 663 N.E.2d 1153, 1154–56 (Ind.1996) (defense counsel's comments during closing argument fell below objective standard of reasonable assistance required by *Strickland* but did not change outcome of the case). Accordingly, Jackson has failed to establish a Sixth Amendment violation on this point.

### C. *Failure to object to jury instruction on attempted rape*

Jackson maintains that trial counsel was ineffective for not objecting to the jury instruction that was given on attempted rape. The crime of attempt occurs when the defendant, acting with the culpability required for commission of a crime, engages in conduct that constitutes a "substantial step" in furtherance of that crime. IND.CODE § 35–41–5–1 (1993). The trial court instructed the jury that the following conduct by Jackson could constitute a substantial step in this case:

1) Force [the victim] to lay on the ground;
2) Tell her he intended to have sexual intercourse with her;
3) Tell her he would kill her if she did not cooperate;
4) Pull, or force her to pull, her pants down; and/or,
5) Check for, and determine the presence of, a sanitary napkin worn by [the victim].

Omitting formal parts, the information charging Jackson read as follows:

Charles L. Jackson did, with the intent to commit the crime of rape, while brandishing a knife did force [the victim], a sixteen (16) year old female, to lay on the ground, told her that he intended to have sexual intercourse with her, pulled her pants down and threatened to kill her if she did not cooperate, said conduct constituting a substantial step toward the commission of the crime of rape.

Jackson correctly notes that the information here did not allege that he (1) forced the victim to pull her pants down; or (2) checked for the presence of a sanitary napkin worn by the victim. Jackson contends that because the instruction was broader than the information, the jury could have convicted him of attempted rape by finding a different substantial step from those alleged in the charging document.

Fair notice to the defendant of the crime charged is a basic tenet of our criminal justice system. The Indiana Constitution guarantees the right "to demand the nature and cause of the accusation ... and to have a copy thereof...." IND. CONST. art. I, § XIII. Notice enables the accused "to prepare his defense, to protect him in the event of double jeopardy, and to define the issues so that the court will be able to determine what evidence is admissible and to pronounce judgment." *Manna v. State*, 440 N.E.2d 473, 475 (Ind.1982) (citations omitted). Therefore, it generally is error for a court to instruct the jury in terms broader than the charging document. This mistake has necessitated new trials in a number of our deci-

sions. *See, e.g., Evans v. State,* 571 N.E.2d 1231 (Ind.1991); *Kelly v. State,* 535 N.E.2d 140 (Ind.1989).

However, reversal is required only where the defendant can show prejudice due to the error. As Jackson maintains, a proper objection to the instruction here should have been sustained because the instruction included factual elements constituting a substantial step that were not contained in the information. And pursuant to the objection the instruction presumably would have been modified to conform with the charging document. Jackson argues that he was prejudiced by the failure to object because the jury would not have convicted him under a proper instruction. He necessarily contends that telling the victim he wanted to have sex with her and forcing her to lie on the ground were not substantial steps in furtherance of the crime. The State responds that Jackson would have been convicted even if an error-free instruction were given because there was evidence to support every act listed in the information as a substantial step.

 The substantial step element of attempt requires proof of any overt act beyond mere preparation and in furtherance of the intent to commit the crime. *Hughes v. State,* 600 N.E.2d 130, 131 (Ind.Ct.App.1992) (citing *Cowans v. State,* 274 Ind. 327, 412 N.E.2d 54 (1980)). This requirement has been described as a "minimal one," *State v. Van Cleave,* 674 N.E.2d 1293, 1304 (Ind. 1996), *reh'g denied,* but the conduct must strongly corroborate the defendant's criminal intent. *Jones v. State,* 523 N.E.2d 750, 752 (Ind.1988). The attempt analysis focuses on what has occurred and not what remains to be done. *Gibson v. State,* 643 N.E.2d 885, 892 (Ind.1994). This showing is easily met in this instance. Rape begins with a physical assault on the victim. Here the victim testified, without contradiction, that Jackson forced her to lie down, stated he wanted to have sex with her, and threatened to kill her when she said she was menstruating. These acts satisfy the substantial step element because they went beyond mere preparation

and were taken with a clear—indeed stated—intent to commit the crime. Other cases involving similar facts have upheld a conviction for attempted rape. *See, e.g., Hughes,* 600 N.E.2d at 132 (collecting cases holding that overt sexual acts by defendant are not required to prove substantial step in furtherance of attempted rape). Because there is no showing of a reasonable probability of a different result at trial had the jury been properly instructed, Jackson has not been prejudiced by his counsel's error. The result of the proceeding is not fundamentally unfair or unreliable. *Fretwell,* 506 U.S. at 369, 113 S.Ct. at 842–43. Accordingly, the defendant's Sixth Amendment claim on this point is meritless.[4]

## II. Sufficiency of the Evidence

 Rape is a Class A felony "if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to a person other than the defendant." IND.CODE § 35–42–4–1 (1993). Jackson contends that none of these three, each of which is sufficient, was proved here to elevate the attempted rape conviction to a Class A felony. In reviewing a sufficiency of the evidence claim, we do not reweigh evidence or assess the credibility of witnesses. A conviction will be affirmed if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Wooden v. State,* 657 N.E.2d 109, 111 (Ind. 1995).

 We assume without deciding that a deadly weapon was not used in this case and that the victim did not sustain serious bodily injury due to Jackson's assault. The issue becomes whether there was sufficient evidence that Jackson attempted to rape the victim by using or threatening the use of deadly force. By the victim's testimony, Jackson threatened to kill her three times. The second time was after the defendant

---

**4.** Jackson relies on *Potter v. State,* 666 N.E.2d 93 (Ind.Ct.App.1996) as authority for reversal. This Court granted transfer in *Potter* and vacated the Court of Appeals opinion on August 6, 1996—ten days before the defendant's brief was filed. Therefore, *Potter* cannot support Jackson's argument. Ind. Appellate Rule 11(B)(3).

forced her to pull her pants down. At that point the victim told Jackson that she was menstruating and he responded that he was going to kill her "for lying." "A threat of deadly force is sufficient if it is imminent enough to cause the victim to submit to the aggressor. It is not necessary that the aggressor actually exert the deadly force threatened." *Ford v. State*, 543 N.E.2d 357, 358 (Ind.1989) (citation omitted). The threat of deadly force was integral to Jackson's ability to subdue the victim in this case. She testified that she complied with Jackson's demands in part because she feared he would kill her. We have upheld Class A rape convictions against a sufficiency challenge under similar facts. *See, e.g., Pennington v. State*, 523 N.E.2d 414, 415–16 (Ind.1988). The evidence sufficed to support the jury's verdict. We decline Jackson's invitation to reweigh the evidence.

### Conclusion

We affirm the convictions and sentence.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.